HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
MEGAN T. HOPKINS, CA Bar #294141
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone: (916) 498-5700
Fax: (916) 498-5710

Attorneys for Defendant
MARCUS LAWRENCE WEBER

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:22-cr-0069-JAM |
|---|---|
| Plaintiff, | MARCUS LAWRENCE WEBER'S SENTENCING MEMORANDUM; EXHIBIT A |
| vs. | |
| MARCUS LAWRENCE WEBER, | Date:  August 30, 2022<br>Time:  9:30 a.m.<br>Judge: Hon. John A. Mendez |
| Defendant. | |

Marcus Lawrence Weber hereby submits his sentencing memorandum for the Court's consideration prior to imposing a sentence in this case. Mr. Weber respectfully requests that the Court impose a within-guideline sentence, because this case clearly falls within the heartland to which the individual guidelines were meant to apply, and the guidelines adequately account for the facts and circumstances before the Court.

### This is a Heartland § 922(g)(1) Case

The Sentencing Commission intended for the Sentencing Guidelines "to apply to a heartland of typical cases." *Koon v. United States*, 116 S. Ct. 2035, 2044 (1996). Mr. Weber's case is a heartland case. He was in possession of a single, handgun-style firearm which he carried in his waistband. He is not accused of brandishing, firing, or otherwise using the firearm in a way which might aggravate the circumstances of this case. The initial contact by law

enforcement was not due to any suspicious or dangerous activity by Mr. Weber, but rather was an attempt to execute state-issued arrest warrants.  Although Mr. Weber briefly fled apprehension by law enforcement, his flight was run-of-the-mill, and ended shortly after it began with Mr. Weber's surrender.  This fact pattern is not at all atypical in the Eastern District of California, and does not merit a sentence above of the guideline range, as the government requests.  *See, e.g. United States v. Bryan Swillis*, 1:17-cr-0237-DAD (probation sentence in felon in possession of a firearm case involving flight from law enforcement which ended when client was tackled by law enforcement); *United States v. Nicholas Delt*, 1:17-cr-0199-DAD (below-guideline sentence in felon in possession of a firearm case involving flight from law enforcement in a vehicle); *United States v. Chaz Banks*, 1:17-cr-0214-JLT (below-guideline sentence in felon in possession of a firearm case involving flight from law enforcement); *United States v. Michael Mathison*, 1:16-cr-0202-DAD (within-guideline sentence in felon in possession of a firearm case involving flight from law enforcement with a loaded firearm); *United States v. Josiah Herena*, 2:16-cr-0185-MCE (within-guideline sentence in felon in possession of a firearm case involving flight from law enforcement); *United States v. Sonny Herrera*, 2:18-cr-00021-TLN (within-guideline sentence in felon in possession of a firearm case involving flight from law enforcement); *United States v. Lewis Moreno*, 1:20-cr-0237-DAD (low-end guideline sentence in single-count felon in possession of a firearm case involving flight from law enforcement, resisting arrest, non-compliant conduct during transport and where defendant had four prior felony offenses and at least four pending cases at time of sentencing); *United States v. Rudy Soto*, 1:20-cr-00092-DAD (within-guideline sentence in single-count felon in possession of a firearm case involving flight from law enforcement and where defendant was an active gang member); *United States v. Chaz Banks*, 1:20-cr-00060-JLT[1] (low-end guideline sentence in single-count felon in possession of a firearm case involving flight from law enforcement into a grocery store where defendant had to be tackled and subdued).

/ / /

/ / /

---

[1] Defendant had two separate cases, three years apart.

WEBER – Sentencing Memorandum

-2-

### Mr. Weber Immediately Accepted Responsibility for the Offense

Mr. Weber entered his guilty plea without the benefit of a plea agreement at his earliest opportunity; just one week following his arraignment on the indictment. He reaffirmed his acceptance of responsibility and expressed his remorse for having possessed the firearm in his written statement to the probation officer in preparation for the PSR. Mr. Weber again expresses his remorse for his "foolish decision," which has rendered him unable to be there for his children during a very painful and frightening time in their lives.[2] Exhibit A: Letter from Marcus Weber.

Mr. Weber asks the Court to assist him in his rehabilitation, both by recommending that he participate in the 500-hour RDAP program through the Bureau of Prisons and recommending that he participate in ReEntry Court following his commencement of supervision in this case. Additionally, if Mr. Weber receives an additional custodial sentence relating to his pending state cases, he intends to seek rehabilitative programming through CDCR.

### Consideration of the § 3553(a) Factors Warrants a Guideline Sentence

The United States Code states that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]."[3] In determining an appropriate sentence, the court must consider 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed to provide just punishment, afford deterrence, protect the public from future harm, and provide the defendant with needed treatment in the most effective manner; 3) the kinds of sentences available to the Court; 4) the sentencing guideline range; 5) pertinent policy statements; 6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and 7) the need to provide restitution to victims of the offense.[4] Here, nearly all of these factors warrant a within-guideline sentence.

---

[2] The mother of Mr. Weber's children, Jaleec Pino, was out-of-state with their children when she was arrested and involuntarily committed to a mental health facility earlier this month. Mr. Weber's children were taken from Ms. Pino and placed in temporary custody with child protective services. Mr. Weber has not received an update as to whether they will be placed with a family member or in foster care, while a dependency case is pending and he is in custody, unable to care for them.
[3] See 18 U.S.C. §3553(a)(1)-(7).
[4] See 18 U.S.C. §3553(a)(1)

*Nature and Circumstances of the Offense; History and Characteristics of Marcus Weber*

The nature and circumstances of the instant offense are unfortunate, but unremarkable: a young man (Mr. Weber is only 26 years old), contacted for outstanding state warrants, in possession of a firearm that he carried in his waistband for protection, who briefly ran from law enforcement. The type of firearm, as well as Mr. Weber's criminal history at the time of the offense (including that he was on a term of supervision when it occurred), are taken into account by the sentencing guidelines. There are no aggravating circumstances in this case that warrant an above-guideline sentence, and a within-guideline sentence will still represent the longest custodial term Mr. Weber has ever received.

Mr. Weber possessed a firearm for his own protection, because he is a well-known figure in the Sacramento rap music scene, and a combination of gang culture and historical conflict with rival rap artists has rendered Mr. Weber the subject of regular threats of violence and death. This is not to say that his bed is not of his own making – Mr. Weber knows the danger of pursuing his art and maintaining his public persona – but it never seemed a simple choice for Mr. Weber to just quit his passion for music and art, and find a safer alternative, until now.

Mr. Weber grew up in a household rife with physical and emotional abuse, drug abuse, and neglect. Mr. Weber's father glorified his own gang involvement and the gang lifestyle, in the few "positive" interactions he shared with Mr. Weber. As a juvenile, when looking to escape the violence and upheaval at home, Marcus had nowhere else to turn than the streets. By the age of twelve, Mr. Weber was without any parental or responsible adult guidance and was spending most of his time with older friends who were gang members. He began representing the same gang and mimicking older gangsters with drug use and fighting. Mr. Weber felt cared for and accepted by his new social circle, in ways he had never felt from his family.

Mr. Weber first began writing music at the age of thirteen. The first song he recorded was "Easy Way Out," describing the everyday struggle and the challenge of escaping an impoverished community to make a new life away from the streets. Mr. Weber writes about what he has seen, heard, and experienced through gang involvement, family discord, and poverty. Mr. Weber sees himself and as artist and a storyteller, and recognizes that "hard"

sounding rap music is what is necessary to succeed in this genre.

Mr. Weber is, as noted above, still a very young man. His time in custody, which has taken him away from his children at a time when they are desperately in need of his protection from their mother's dangerous condition, has brought to the forefront the many repercussions of his poor decisions. Mr. Weber sincerely desires to redirect his future path with a new environment, stable employment, and dedicating his free time to his children. Mr. Weber acknowledges that h needs the support of counseling, vocational training, and the structure offered through supervised release, and hopes to engage with all of the resources available to help him grow as an individual and in his role as a parent. A within-guideline sentence, followed by a lengthy term of supervised release would be a sentence that is sufficient, but not greater than necessary to accomplish the goals of sentencing in light of the nature and circumstances of this case, and Mr. Weber's personal history and characteristics.

*The Need for the Sentence to Provide Just Punishment, Deter Criminal Conduct, Protect the Public, and Provide Effective Treatment*

Mr. Weber needs a combination of trauma counseling and cognitive behavioral therapy in order to fully depart from his past thinking and recover from all that he has carried with him since childhood. This type of treatment can be most effectively provided through community supervision. Mr. Weber can receive some of this support through the 500-hour RDAP program. Following his release from custody, Mr. Weber hopes to continue treatment on supervised release, and to seek the additional structure and support offered through the ReEntry Court program. Mr. Weber asks this Court to recommend both programs in combination with the sentence imposed, in the hopes that he might be more closely considered for acceptance should the demand exceed space availability, which is often the case.

The level deterrence and incapacitation accomplished through a within-guideline sentence is sufficient to address Mr. Weber's current offense and his prior criminal history. He is very driven to complete his sentence as soon as possible, including seeking out opportunities to earn time credit through rehabilitative engagement, in order to be reunited with his children and ensure that they do not because victims of an often neglectful and abusive foster care system.

Having not had any support or guidance from his own father, Weber sees his how much his choices have negatively impacted his children, and recognizes that he must break the cycle.

### *The Need to Avoid Unwarranted Sentencing Disparities*

The Supreme Court has opined that the sentencing judge must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[5]  Sadly, Mr. Weber's case is not unique, and he does not ask this Court to impose a sentence outside of that which is called for in the guidelines.  As discussed in detail above, this is a heartland case, and numerous other defendants with similar facts have sentenced at or below the applicable guidelines, accordingly.

### **CONCLUSION**

Marcus Weber asks the Court to consider the circumstances of his upbringing, which paved the way for many of the mistakes that have led him to this point; his earnest desire for change; and the fact that he still faces several pending state cases with additional sentencing exposure.[6]  He asks the Court to evaluate the applicable guideline range and find that a sentence within that range is sufficient, but not greater than necessary given the facts of this case.  Mr. Weber asserted in his formal objections that a guideline range of 37-46 months applies in this case, and asks the Court to consider a sentence of not more than 42 months, coupled with a lengthy term of supervision and an opportunity for Mr. Weber to turn his life around, before it passes both him and his children by.

DATED:  August 23, 2022             Respectfully submitted,

                                    HEATHER E. WILLIAMS
                                    Federal Defender

                                    /s/ *Megan T. Hopkins*
                                    MEGAN T. HOPKINS
                                    Assistant Federal Defender
                                    Counsel for MARCUS LAWRENCE WEBER

---

[5] *Koon v. United States*, 518 U.S. 81, 113 (1996).
[6] Mr. Weber does not ask this Court to consider concurrent time, and he acknowledges that those cases are unrelated to the instant offense and will need to be addressed separately when he returns to the state's jurisdiction.