PHILLIP A. TALBERT
United States Attorney
ADRIAN T. KINSELLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARCUS LAWRENCE WEBER,<br><br>Defendant. | CASE NO. 2:22-CR-00069-JAM<br><br>UNITED STATES' SENTENCING MEMORANDUM; EXHIBITS<br><br>DATE: August 30, 2022<br>TIME: 9:30 a.m.<br>COURT: Hon. John A. Mendez |

## I.   INTRODUCTION

The Court should sentence Marcus Weber to ten years in prison. Weber is a violent felon who has shown a callous disregard for the law and the safety of others. He possessed the charged firearm while on the run from a spree of four firearm related felonies that he committed within a five-month period, he led the police on a car chase and foot chase through a populated apartment complex, and he tossed a loaded gun in thick brush less than 30 feet away from children. He began this crime spree after lasting only a month and a half on probation from a prior felony drug trafficking offense that involved the discharge of a firearm into his neighbor's apartment. Tellingly, while he could not be bothered to appear for his pending state cases, he did appear on a YouTube interview where he joked about how the police were looking for him. Weber has consistently demonstrated a complete lack of regard for the law and even human life. His history shows a pattern of heinous crime that has only been interrupted by incarceration. A ten-year sentence is appropriate as punishment and deterrence for what will hopefully

be Weber's last firearm offense, but is also specifically needed to protect the public from the proven danger he represents.

In the instant case, after the police surrounded Weber's car, he jumped out of the car and continued his flight on foot. Wearing a ski mask and armed with a loaded, chambered firearm, he ran past a family with two small children. He dropped the gun, picked it back up, and eventually tossed it in an area where it could have been found by the children if the officers had not recovered it. When officers later asked the defendant about his pending cases, he said they were "all bullshit." Exhibit 1, Discovery Excerpts, at Bates No. 00000040; PSR ¶ 14. As discussed below, two of these cases involve serious domestic violence incidents, including one where he pistol-whipped the mother of his children (Victim #1), kicked her in the stomach, and told her he was going to kill her unborn child. The other domestic violence case involved him brandishing a firearm at another woman (Victim #2), cocking it, and threatening to kill her over a $600 debt.

## II.     PROCEDURAL BACKGROUND

Law enforcement arrested Weber, then a fugitive with four active felony warrants, on March 16, 2022. ECF No. 1. Weber was charged by complaint on March 23, 2022. *Id*. A grand jury returned a single count indictment on April 7, 2022, charging Weber with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 8. Weber pleaded guilty on April 19, 2022. ECF No. 15. The matter is now calendared for sentencing on August 30, 2022. ECF No. 19. There are formal objections pending before the Court. ECF Nos. 22, 23.

## III.     APPLICABLE LAW

"A defendant has no right to a Guidelines sentence," *United States v. Hilgers*, 560 F.3d 944, 947 (9th Cir. 2009), and we do not automatically "presume that a non-Guidelines sentence is unreasonable," *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). A sentencing court has discretion "to 'conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come.'" *Pepper v. United States*, 562 U.S. 476, 489, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) (quoting *United States v. Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972)).

IV. **18 U.S.C. § 3553 (a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE**

A. **March 23, 2022; Roseville – An armed, masked Weber led the police on a car chase and foot chase in a populated apartment complex**

On March 16, 2022, at approximately 4:00 p.m., police officers located Weber. Exhibit 1 at Bates Nos. 00000040-41, 00000045. Weber was hiding in an apartment complex in Roseville and was wanted on three separate Sacramento felony cases [assault with a firearm, in violation of PC 245(a)(2); felon in possession of a firearm, in violation of PC 29800(a)(1); and probation violations for a recent conviction for possession of methamphetamine for sale, in violation of HS 11378], as well as criminal threats case (in violation of PC 422) in Fresno County. *Id*. at 00000041; PSR ¶ 47. When officers attempted to stop him, he led them on a vehicle pursuit through the complex. Exhibit 1. at 000000041-42, 000000050. Video footage of this pursuit shows the defendant speeding around other vehicles and past people and families in the complex. Body camera recording, provided to defense as Bates No. WEBER_00000099, at 00:05 to 1:04. Officers eventually surrounded Weber's vehicle in a cul-de-sac. *Id*. Instead of surrendering, Weber ran away on foot. Exhibit 1 at 00000041-42. He was wearing a black ski mask and was holding a loaded firearm. *Id*. at 00000042. The firearm had a round in the chamber and another 11 rounds in an extended magazine. *Id*. at 00000042, 00000052.



FIGURE 1: WEBER ABANDONING HIS CAR AND SPRINTING FROM POLICE WITH A SKI MASK AND A LOADED FIREARM. SNAPSHOT OF BODY CAMERA VIDEO (WEBER_00000099).



FIGURE 2: VIEW OF A FAMILY WITH TWO SMALL CHILDREN WEBER RAN PAST WITH A LOADED FIREARM. SNAPSHOT OF BODY CAMERA VIDEO (WEBER_00000073).

During the foot pursuit, Weber dropped the firearm, picked it back up, and kept running. Exhibit 1 at 00000045. He continued to run until he was stuck in a dry creek bed, where he hid the firearm, and was surrounded by police and a K9 officer. *Id*. During the arrest, officers recovered the hidden firearm several feet away from Weber. *Id.*



FIGURE 3: AN OFFICER RECOVERS WEBER'S FIREARM IN THICK BRUSH. SNAPSHOT OF BODY CAMERA VIDEO (WEBER_00000067).



FIGURE 4: WEBER WEARING A SKI MASK. SNAPSHOT OF BODY CAMERA VIDEO (WEBER_00000105).

During a post-arrest statement, Weber claimed to carry the firearm for self-protection. PSR ¶ 14. When asked why he had run from the cops with a gun when he had four warrants. Weber replied, "I know, but I didn't kill nobody." PSR ¶ 14. He further elaborated: "This situation is really fucked up, the whole situation. Because, what my warrants is for… bullshit." *Id.*; Body camera recording, Weber_00000074 at 32:10.

### V.    18 U.S.C. § 3553 (A)(1): THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT:

At only 26 years old, the defendant has amassed the criminal history summarized below:

| Date | Offense summary | Outcome |
|---|---|---|
| 7/4/2012 | Gang related shooting that resulted in the death of a three-year-old boy | Weber was charged and prosecuted for murder (PC 187(a)). The case resulted in a mistrial in 2015. PSR ¶ 41. |
| 2/7/2016 | Possession of metal knuckles | Misdemeanor conviction for PC 21810 – Possession of metal knuckles. PSR ¶ 34. |
| 2/7/2017 | Distribution of methamphetamine | Charged with two counts of HS 11379. PSR ¶ 30; WEBER 00000262-64. |
| 10/3/2017 | High speed car pursuit (Weber was a passenger). Occupants threw a gun from vehicle. Search of vehicle resulted in another gun, as well as cocaine. | Felony conviction for possession of a concealed firearm in a vehicle, PC 25400(A)(1). PSR ¶ 33. |
| 7/2/2020 | Possession of a machine gun, an AR pistol, and three Glock switches | Dismissal (suppression of car stop). PSR ¶ 44. |
| 1/12/2021 | Negligent discharge of a firearm through apartment wall, possession | Conviction for HS 11378. PSR ¶ 36. |

| | | |
|---|---|---|
| | of methamphetamine for sale | |
| 7/2/2021 | Pistol whipping and assault of pregnant victim | Pending (defendant failed to appear) PSR ¶ 45. |
| 7/7/2021 | Possession of a firearm | Pending (defendant failed to appear). PSR ¶ 46. |
| 12/5/2021 | Defendant threatened to kill victim with firearm | Pending (defendant failed to appear). PSR ¶ 47. |
| 2/14/2022 | Domestic violence stalking case against Victim #2 | Pending charging decision by the Placer County District Attorney's Office. PSR ¶ 48. |
| 3/16/2022 | Possession of a firearm | Pending sentencing (the instant case). PSR ¶¶ 8-15. |

### A. The Defendant's Four Pending State Cases

When Weber committed the instant offense, he was on the run from four felony cases, all of which involved the possession or use of a firearm. Each of these serious firearm offenses Weber described as "bullshit" are detailed below.

1. **July 2, 2021; Sacramento – Weber assaulted and pistol-whipped Victim #1, a pregnant woman, and threatened to kill her and her unborn child.**

At approximately 2:30 a.m. in the morning, Victim #1 went to pick up her daughter from Weber. Exhibit 2, Discovery Excerpts related to Weber's Pending Assault with a Firearm Case, at Bates No. 00000012. According to the police report,[1] Victim #1 and Weber got into an argument about him not wanting to hand over one of the children. *Id*. Weber repeatedly struck her on the head with a gun, punched her, and choked her. Knowing she was pregnant, Weber said "I'm gonna kill that baby" and "I'm gonna kick that baby out of you." *Id*. at 00000013. Weber kicked Victim #1 in the stomach and on her back. *Id*. Victim #1 estimated that the assault lasted approximately 20 minutes. *Id*. Eventually, Weber's mother pulled him off of Victim #1. *Id*. Weber cocked the gun and aimed it at Victim #1's head, saying "I'm going to kill this bitch." *Id*. Weber's mother intervened again by putting her body in between him and Victim #1. Weber ultimately drove away with the gun. *Id*.

//

---

[1] On July 6, 2022, the defense provided the Probation Officer with a purported transcript of a call between the state defense attorney assigned to this case, her defense investigator, and Victim #1 wherein Victim #1 recants the statements she made in this police report. For example, she claims, "he never hit me" and that she got the laceration on her head from falling into a fence pole. See Def. Informal Obj, Exhibit 1 to the PSR, ECF No. 20-1. This recantation is inconsistent with the CSI pictures, which show trauma to her face and body, including an eye that was swollen shut.

The pictures below were taken of Victim #1 by a CSI photographer the night of the incident:

Figure 5: Picture of Victim #1's bruised and bloody face. WEBER_SAC_PC245_00000077.

Figure 6: Picture of Victim #1's right eye, swollen shut. WEBER_SAC_PC245_00000040.

The police report describes a laceration to Victim #1's head that is 1.5 inches in length:



Figure 7: Description of Victim #1's head injury in police report. Exhibit 2 at 00000015

On July 12, 2021, the Sacramento District Attorney's Office charged Weber with assault with a firearm, in violation of Penal Code 245(a)(2); infliction of corporal injury on an intimate partner, resulting in a traumatic condition, in violation of PC 273.5(a); willful use of force and violence upon the person of another, resulting in infliction of serious bodily harm, in violation of PC 243(d); and criminal threat, in violation of PC 422.  *Id.* at 00000001-3.  The case is pending in Sacramento Superior Court.  The defendant failed to appear for a plea hearing on December 17, 2021.  Exhibit 2b, Docket for Case # 21FE011614.

    2.    **July 7, 2021; Sacramento – Five days after Weber assaulted Victim #1, he was caught by Probation with a Ruger handgun**

After learning of the domestic violence case above, Weber's probation officer instructed him to report to her office, where they arrested him for violating his probation.  Exhibit 3 at Bates No. 00000007.  Although he was driven there by K.H., his then girlfriend, Weber lied to the probation officer and claimed his uncle drove him there in a truck.  *Id.* at 00000007-8.  Officers searched the parking lot for

this truck but did not find it. Instead, they found K.H., who admitted she had driven Weber there. *Id.* at 00000008. A search of her vehicle resulted in the discovery of a loaded 9mm Ruger Semi-Automatic pistol under the passenger seat. *Id.*; PSR ¶ 46.

 

FIGURE 8: LEFT: PICTURE OF RUGER FIREARM TUCKED IN THE PASSENGER SEAT OF CAR K.H. DROVE WEBER TO PROBATION OFFICE IN. RIGHT: PICTURE OF SAME FIREARM. WEBER_SAC_PC29800_00000009.

After discovering this firearm, one of the probation officers read Weber his *Miranda* rights and attempted to interview him. *Id*. at 00000011. Weber said, "My girl dropped me off here. What did you find in the car? I don't want to talk anymore. Take me to jail!" *Id*. Although Weber refused to make a post-arrest statement about the firearm, he later yelled at K.H. on a recorded jail call, admitted he was going to prison, and told her she "could have played things a lot smarter." Jail call between Weber and K.H. on July 7, 2021 at 6:54 p.m. at 13:41. Given that Weber possessed this firearm five days after he pistol-whipped Victim #1, it is likely this is the same firearm.

For this conduct, the Sacramento District Attorney's Office charged Weber with a new charge for violating PC 29800 by being a felon in possession of a firearm. PSR ¶ 46; Exhibit 3 at 00000001. Weber failed to appear for a hearing in this case on December 17, 2021. Docket for Case # 21FE019593, Exhibit 3b.

   3. **December 5, 2021; Fresno, CA – Weber brandished a firearm at Victim #2, and threatened to kill her over a $600 debt**

On December 5, 2021, at approximately 10:45 a.m., a distraught young woman (Victim #2) approached two Fresno Police Department officers in marked cars. Excerpts of Police Report, Exhibit 4

at Bates No. 00000006. Once Victim #2 calmed down enough to speak, she told the officers that Weber, then her ex-boyfriend, had showed up to her apartment the night before, claiming he had nowhere else to stay. *Id*. Victim #2 allowed Weber to stay the night, with the understanding he would have to leave the next morning. *Id*. In the morning, Weber began to argue with Victim #2 about why she no longer wanted to be in a relationship and about $600 she owed him. *Id*. Victim #2 told Weber they could go to the bank to get the money. *Id*. Weber took her phones and drove her car, with her riding in the passenger seat. *Id*. On the way to the bank, Weber pulled out a handgun, cocked it, and told her, "If you don't give me what I want I'll kill you." *Id*. at 00000006. Victim #2 jumped out of the vehicle and ran on foot until she found the officers. *Id*. at 00000007. Officers sought and received an emergency location warrant for one of Victim #2's phones, which were still in her vehicle. *Id*.

About an hour and a half later, officers located and stopped Weber, who was still driving Victim #2's vehicle. *Id*. Weber had since picked up his cousin, a juvenile female. *Id*. at 00000010. Although officers did not locate a firearm on Weber's person or in the car, the juvenile female told them she had a bullet hidden in her vagina, and that Weber had told her to hide it. *Id*. A female police officer assisted with collecting this evidence. *Id*. at 00000007.

The Fresno County District Attorney's Office charged Weber with criminal threat, in violation of PC 422. The case is pending in Fresno Superior Court. *Id*. at 00000015-16. The defendant failed to appear for an arraignment on this case on February 16, 2021. Docket for Case No. F22900807, Exhibit 4b.

4. **Revocations of Probation**

On July 8, 2021, and again on December 8, 2021, Weber's probation officer petitioned the Court to revoke his probation. Exhibit 5 at 00000001-2, 00000020-21. These petitions cite Weber's commission of the assault and criminal threat cases discussed above. *Id*. A bench warrant was issued for Weber's arrest on December 10, 2021, and he failed to appear on December 17, 2021. Docket for Case # 21FE000785, Exhibit 5b.

//

//

B.     **THE DEFENDANT'S OTHER RECENT FIREARMS RELATED CRIMINAL HISTORY**

1.     **July 3, 2020; Vacaville – Weber possessed a machine gun loaded with an extended magazine, another firearm, and three Glock switches**

On the night of July 3, 2020, Vacaville Police Department officers contacted Weber and K.H. in the parking lot of a Motel 6 motel. PSR ¶ 44. Officers searched the car after found a loaded, short-barrel AR 5.56 caliber pistol. *Id*. This firearm had a round in the chamber and another 29 in an extended magazine. *Id*. Under the passenger seat where Weber had been sitting, officers found a .40 caliber pistol that had been converted to a machine gun. *Id*. This machine gun was loaded with a round in the chamber and another 21 rounds. *Id*. The duffel bag also contained three additional Glock switches. *Id*. These switches were identical to the one inserted in the machine gun. *Id*.

 

FIGURE 9: LEFT: PICTURE OF SHORT BARREL PISTOL AND FULLY AUTOMATIC FIREARM WEBER POSSESSED ON JULY 3, 2022. RIGHT: PICTURE SHOWING GLOCK SWITCH INSERTED IN THE FIREARM, CONVERTING INTO A MACHINE GUN. WEBER_000000147-48.

For this conduct, the Solano County District Attorney's Office charged Weber and K.H. with fireams violations. PSR ¶ 44. The case was ultimately dismissed on February 16, 2021, after the state court granted a motion to suppress the officer's search of the vehicle. *Id*. The transcript of the supression hearing shows the state judge disagreed that officers had probable cause to search the car on account of loose cannabis observed in the vehicle or for an inventory search.

2.  **January 12, 2021; Sacramento – Weber fired a gun into an occupied apartment where he also possessed methamphetamine for sale and where his minor children were present**

This is the case Weber was on probation for when he committed the instant offense, as well as his four pending state cases. PSR ¶ 36. On January 12, 2021, at around 1:51 pm, a woman called 911 and reported hearing "an explosion" in her apartment. Excerpt from Police Report, Exhibit 6 at Bates No. 00000176. On the call, she described seeing s piece of metal on the ground and what appeared to be a gunshot hole in the wall of her living room. *Id.*; PSR ¶ 36. Officers responded to the apartment complex and investigated the adjacent apartment, where they contacted Weber, his girlfriend K.H., and Weber's two children. Exhibit 6 at 00000153. The children were 8 months old and 3 years old, respectively. *Id*. Despite the hole in his wall and the fresh pieces of debris near the hole, Weber feigned ignorance about any firearm. *Id*. at 00000181. Although officers never located the firearm, Weber's hands would later test positive for gunshot residue. *Id*. at 00000153. Weber's three-year-old daughter told one of the officers she heard a loud bang, that she had seen the gun on a table. Body camera recording, WEBER_00000307, at 15:19 to 15:39. When asked where the gun was at, she looked and pointed towards the window, leading the police to believe Weber tossed the gun out the window. *Id*. at 15:39 to 18:05. Officers also discovered approximately two ounces of methamphetamine in Weber's bedroom. Exhibit 6 at 00000153. The methamphetamine was located on the ground and was easily accessible to Weber's infant children. *Id.*; PSR ¶ 36.

The Sacramento District Attorney's Office charged Weber with violations of possession of controlled substances for sale, in violation of Health and Safety Codes 11370.1(A); possession of controlled substance while armed, in violation of HS 1130.1(A); felon in possession of a firearm, in violation of Penal Code Section 29800(a)(1), child abuse with possible grave bodily injury or death, in violation of PC 273A, and possession of controlled substances for sale, in violation of HS 11378. Exhibit 00000006 at 00000149-151. Weber was ultimately convicted of the HS 11378 charge. PSR ¶ 36. He was on probation for this charge when he committed the instant offense, as well as the four other pending cases.




FIGURE 10: PICTURE OF BULLET HOLE (FROM WEBER'S PERSPECTIVE) FILLED WITH PIECES OF A PAPER TOWEL.  WEBER_00000379.

FIGURE 11: PICTURE OF BULLET HOLE (FROM WEBER'S PERSPECTIVE) WITH PAPER TOWEL PIECES REMOVED. WEBER_00000380.




FIGURE 12: PICTURE OF BULLET HOLE FROM NEIGHBOR'S PERSPECTIVE.  WEBER_00000391.

FIGURE 13: PICTURE OF BULLET FRAGMENT ON NEIGHBOR'S COFFEE TABLE. WEBER_00000404.

## VI.  18 U.S.C. § 3553(A)(2)(A):  THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT

### A.  The seriousness of the offense

Weber is charged with being a felon in possession of a firearm.  He has shown a consistent pattern of illegally obtaining guns and then using those guns to wreak havoc on the community.  The charged weapon is a semi-automatic firearm loaded with an extended magazine, which Weber possessed while on probation for a felony drug trafficking case, resulting in further enhancements.  As discussed above, the felony drug trafficking offense involved the discharge of a firearm into an occupied neighbor's apartment, where officers recovered the bullet fragment on the neighbor's coffee table.  Additionally, Weber dropped the firearm in thick brush about 30 feet away from where he ran past two

children with a loaded gun and a ski mask.  Had the officers not recovered the firearm, someone else, including a child, would likely have found it.

### B. Respect for the law

Weber has demonstrated that he has no respect whatsoever for the law.  He committed this offense while on probation, and while on the run from four pending felony cases, all of which are firearms related.  During his post-arrest statement, he told the officer all of these pending cases were "bullshit."  Weber acts as if he is above the law.  A significant sentence is necessary to demonstrate to the defendant that he is not.

### VII. 18 U.S.C. § 3553(A)(2)(B):  THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

Weber has yet to be deterred by any arrest, court order, imprisonment, or conviction.  Tellingly, Weber was so cavalier about his pending warrants that he even appeared in an interview posted to YouTube and joked with the interviewer about how the police were looking for him.[2]  In a video posted to YouTube on December 29, 2021 (12 days after he failed to appear in three of his cases), he had the following exchange with his interviewer:

| | |
|---|---|
| Interviewer: | "You already know I got Sacramento in the building today, man. I got Uzzy Marcus in the studio what's popping? |
| Weber: | What's happening, bro? |
| Interviewer: | How you doing? |
| Weber: | You know, you know. Another day another dollar, man. |
| Interviewer: | Everybody seem to be looking for you right no. I ain't gonna lie. |
| Weber: | I know man, even the police, even the police! (laughing) |
| Interviewer: | You ain't gotta worry about them here, you feel me, they ain't coming up in here I promise you that bro. |
| Weber: | Ok. Good good. (smiling) |

---

[2] *See* Uzzy Marcus on 3 Bails, Mozzy, Oak Park, Adam 22, Bloods, People Hating him (Things get Heated!), https://www.youtube.com/watch?v=j1gEyuFcNfU (Last visited on August 23, 2022). The conversation occurs at 20 seconds into the video.

## VIII. 18 U.S.C. § 3553(A)(2)(B): THE NEED TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Weber is a danger to his intimate partners, to his children, and to the public in general. He has beaten and threatened women, left methamphetamine in the reach of his infant and toddler, fired a gun into his occupied neighbor's apartment, sped and ran past people and families with a loaded gun while fleeing from law enforcement, and tossed that loaded gun in thick brush near young children.

## IX. CONCLUSION

For the reasons set forth above and in the PSR, the United States respectfully recommends that this Court sentence this defendant to ten years in prison. Such a sentence is justified by the nature and circumstances of this offense, the defendant's criminal history, the need for the sentence to reflect the seriousness of the offense, and to provide adequate deterrence. Prior arrests, pretrial terms of imprisonment, and prison sentences have not deterred the defendant from continuing a life of crime replete with assaultive behavior and the use and possession of firearms. Pursuant to 18 U.S.C. § 3553(a), and in particular (a)(2), incarceration of the defendant for an extended period of time is appropriate as punishment and deterrence, but is also specifically needed to protect the public from further crimes of the defendant.

Dated: August 23, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ ADRIAN T. KINSELLA
ADRIAN T. KINSELLA
Assistant United States Attorney